UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOAN L. CARVER,

               Plaintiff,

vs.                                      Case No. 8:10-cv-946-T-27AEP

DAVID GEE, in his official capacity
as Sheriff of Hillsborough County, Florida,

               Defendant.

_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion for Summary Judgment (Dkt. 15) and

Plaintiff's memorandum in opposition (Dkt. 25). Upon consideration, Defendant's Motion for

Summary Judgment (Dkt. 15) is **GRANTED**.

### Introduction

      This case involves a claim for age discrimination in violation of the Florida Civil Rights Act,

Fla. Stat. § 760.01, *et seq.* ("FCRA"), and the Age Discrimination in Employment Act of 1967,

29 U.S.C. § 621, *et seq*. ("ADEA"). Plaintiff, Joan L. Carver ("Carver"), claims that her age was

a determining factor in the decision by the Hillsborough County Sheriff's Office (the "Sheriff's

Office") to terminate her employment. Specifically, Carver alleges that the Sheriff's Office, after

terminating her, chose to continue the employment of at least two similarly situated and younger

co-workers and that those co-workers assumed responsibility for the duties performed by Carver

prior to her termination. *See, e.g.*, Amended Complaint, ¶ 4. The Sheriff's Office argues that Carver

cannot establish a *prima facie* of discrimination and that her termination was based on a legitimate

nondiscriminatory reason.

The undisputed facts include no direct evidence of age discrimination nor are they sufficient to establish a claim for age discrimination based on circumstantial evidence. Even assuming Carver is in a protected age group and qualified, the undisputed evidence demonstrates that the Sheriff's Office had a legitimate nondiscriminatory reason for terminating Carver (*i.e.*, her poor performance). As Carver has failed to demonstrate that this reason is pretextual, the Sheriff's Office is entitled to summary judgment.

### *Background*

Carver was employed by the Sheriff's Office as the Medical Services Manager from February 5, 2001, until her termination on March 4, 2009. Amended Complaint, ¶ 4; Defendant's Answers to Plaintiff's First Set of Interrogatories (Dkt. 15-2) ("Rog Answers"), No. 2. The position was at all times "unclassified" under the Hillsborough County Service System (*i.e.*, it was not subject to the same procedures and protections that are conferred upon "classified" employees under the Civil Service law). *Id.*

The Sheriff's Office operates a jail system composed of two large detention facilities, Orient Road Jail and Falkenberg Jail. Deposition of James Previtera (Dkt. 16) ("Previtera Dep."), p. 5. The Sheriff's Office contracts with independent contractors in order to provide medical care and treatment to inmates at its detention facilities. Under Florida law, the independent contractors are required to seek third-party reimbursement (*e.g.*, reimbursement from inmates' insurance) for expenses incurred in providing medical care, treatment, hospitalization, and transportation to inmates. Fla. Stat. § 901.35; *see* Deposition of Thea Clark (Dkt. 17) ("Clark Dep."), pp. 9-10. An independent contractor's failure to seek reimbursement relieves the Sheriff's Office of any financial liability under the medical services contract. Deposition of Jose Docobo (Dkt. 18) ("Docobo Dep."),

2

p. 10.  In her position as Medical Services Manager, Carver was "responsible for monitoring" the medical contracts between the Sheriff's Office and the independent contractors.  Plaintiff's Deposition (Dkt. 19) ("Plaintiff's Dep."), pp. 24, 69, Ex. 4; Docobo Dep., pp. 18, 20.

In 2007,  Prison Health Services ("PHS"), a private contractor hired to provide medical services to inmates, sued the Sheriff's Office for damages in excess of $1,200,000 alleging that the Sheriff's Office had breached the parties' medical services contract by failing to reimburse PHS for offsite medical charges along with attorneys' fees and costs (the "PHS Litigation").  Clark Dep., p. 6; Docobo Dep., p. 9.  Prior to the lawsuit being filed and during the course of the PHS Litigation, Carver advised the Sheriff's Office that no reimbursement was due to PHS.  Docobo Dep., pp. 9-10; Clark Dep., pp. 9-12.  Relying on Carver's representation that PHS had failed to seek reimbursement directly from inmates as required by the contract, the Sheriff's Office elected to retain outside counsel and litigate the issue of PHS's entitlement to damages.  Clark Dep., p. 11; Docobo Dep., p. 10; Plaintiff's Dep., p. 46.

In January, 2009, the Sheriff's Office learned, contrary to Carver's representations, that PHS had produced "thousands of documents" to the Sheriff's Office to support its efforts to seek reimbursement for offset medical charges.  Clark Dep., pp. 14, 16; Docobo Dep., p. 11; Plaintiff's Dep., p. 47.  Included in these documents were e-mails that suggested PHS had been providing Carver and the Sheriff's Office with information reflecting its efforts to seek third-party reimbursement.  Clark Dep., p. 18.  In response, Chief Deputy Docobo decided to terminate Carver based on her failure "to fulfill her responsibilities [of] manag[ing] the contract" with PHS.  Docobo Dep., pp. 18-19.  Acting on the advice of counsel, however, Chief Deputy Docobo decided to wait until the PHS Litigation was resolved before carrying out his decision.  Docobo Dep., pp. 19-20;

Previtera Dep., pp. 15-16.

Also in January of 2009, the Sheriff's Office decided to revisit[1] the restructuring of its medical service personnel after learning that Dr. Bethany Weaver was leaving her position with the independent contractor then responsible for providing medical care and treatment to Hillsborough County inmates. Docobo Dep., pp. 13, 15-16; Rog Answers, No. 2.  On February 2, 2009, the Sheriff's Office sent an internal memo announcing the hiring of Dr. Weaver to serve as Medical Advisor, effective March 2, 2009.  Plaintiff's Dep., Ex. 2.  The Medical Advisor position was designed to have a licensed physician provide medical consultation, direction, training, and other health and medical services to the Sheriff's Office, and to oversee the medical care being provided to inmates by the independent contractor.  Docobo Dep., p. 15, Deposition of Dr. Bethany Weaver (Dkt. 20) ("Weaver Dep."), pp. 12-14; Rog Answers, No. 2. The position was offered to Dr. Weaver and no other candidate was considered for the position.  Docobo Dep., p. 14.

On or about February 9, 2009, the Sheriff's Office notified Carver that she was being terminated and that her position was being eliminated. Previtera Dep., p. 21; Plaintiff's Dep., p. 44. During the meeting, Colonel Previtera told Carver that the Sheriff's Office was "less than satisfied with her performance during the [PHS Litigation] and the information she provided."  Previtera Dep., pp. 21-22; Plaintiff's Dep., pp. 44, 52-54, 56-57, Ex. 6.  On March 2, 2009, the Sheriff's Office offered Carver the option to resign in lieu of being terminated.  Plaintiff's Dep., p. 72.  Carver declined the invitation to resign and was formally terminated on March 5, 2009.  Plaintiff's Dep., p. 72, Ex.6. The Sheriff's Office subsequently eliminated the position of Medical Services Manager.

---

[1] The Sheriff's Office unsuccessfully attempted to restructure its medical service personnel during 2007. Docobo Dep., pp. 7-8; Rog Answers, No. 5.

4

Previtera Dep., p. 22.

Following Carver's termination, the Sheriff's Office redistributed her job duties between Dr. Weaver and Amy Pidgeon.[2]  Plaintiff's Dep., p. 62; Previtera Dep., pp. 23, 25; Docobo Dep., p. 20; Weaver Dep., p. 18.  Pidgeon was already employed by the Sheriff's Office as an Accreditation Manager at the time Carver was terminated.  *Id.*  Pidgeon assumed responsibility for billing issues between the independent contractor and the Sheriff's Office.  Previtera Dep., p. 25; Weaver Dep., p. 18; Deposition of Amy Pidgeon (Dkt. 21) ("Pidgeon Dep."), pp. 15-19; Deposition of Lisa Coyle (Dkt. 26-1) ("Coyle Dep."), p 13.[3]  Dr. Weaver was responsible for monitoring the medical service contract, advising the Sheriff's Office of certain medical issues, and also assumed Carver's responsibilities as the ADA coordinator and exposure officer.  Previtera Dep., p. 26; Weaver Dep., p. 18; Plaintiff's Dep., pp. 34-35, Ex. 3.  In addition, Dr. Weaver and/or Pidgeon replaced Carver as the person responsible for supervising the Human Services Supervisor and the Community Services Officer.  Previtera Dep., p. 27; Coyle Dep., p. 5-6, 9; Plaintiff's Dep., p. 58; Deposition of Jo Ann Dixon (Dkt.26-2) ("Dixon Dep.), p. 11.  *But see* Weaver Dep., pp. 18-19.[4]

Carver alleges that she was 53 years old at the time she was terminated.  Amended Complaint, ¶ 4.  Carver further alleges that Pidgeon was approximately 30 years old and that Dr.

_____

[2] Carver claims that, in effect, she was replaced by Pidgeon because Pidgeon moved into Carver's old office immediately after Carver was terminated and because Pidgeon assumed some of the duties previously assigned to Carver. Plaintiff's Dep., p. 59, Ex. 7.  While Carver claims that Dr. Weaver assumed some of her duties, Carver was not a licensed physician and, therefore, was not qualified to serve as Medical Advisor nor was Dr. Weaver a similarly situated employee.

[3] The billing and contract administrative functions are now performed by Dr. Weaver's administrative assistant. Previtera Dep., pp. 29-30.

[4] Tellingly, these individuals were each 58 years old at the time Carver was terminated and remained employed by the Sheriff's Office.  Coyle Dep., p. 7; Dixon Dep., p. 8.

Weaver was 38 years old at the time of Carver's termination.  Plaintiff's Memorandum of Law in

Opposition to Defendant's Motion for Summary Judgment (Dkt. 25) ("Plaintiff's Opp."), pp. 1-2.

### *Standard*

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to

interrogatories, affidavits and admissions on file show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  "An issue of fact is 'material' if, under the

applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm*

*Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  "An issue of fact is 'genuine' if the record taken as

a whole could lead a rational trier of fact to find for the nonmoving party."  *Id.* at 1260.  All the

evidence and factual inferences reasonably drawn from the evidence must be viewed in the light

most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970);

*Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of

a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use

of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific

facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24.  The evidence must

be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986).

The Court will not weigh the evidence or make findings of fact.  *Anderson*, 477 U.S. at 249;

*Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).  Rather, the Court's role is limited

to deciding whether there is sufficient evidence upon which a reasonable jury could find for the non-moving party. *Id.*

## Discussion

Under the ADEA, it is unlawful for an employer "to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1) (2011). A plaintiff must prove through direct or circumstantial evidence "that age was the 'but for' cause of" the discharge. *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010) (*per curiam*) (citing *Gross v. FBL Fin. Servs., Inc.* ___ U.S. ___, 129 S.Ct. 2343, 2350 (2009)).

Carver has submitted no direct evidence of discrimination. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) ("only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age will constitute direct evidence of discrimination"); *see also* Plaintiff's Dep., pp. 80-81 (acknowledging that no one with the Sheriff's Office ever made any comment to her about her age). Thus, Carver must rely on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny in an attempt to establish her disparate treatment claim by circumstantial evidence. *See, e.g., Chapman v. Al Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000).

In order to make out a *prima facie* case for an ADEA violation based on circumstantial evidence, a plaintiff must show that she (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, and (4) was replaced by a younger individual. *See, e.g., Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989). The Eleventh Circuit has adopted slightly different criteria in RIF cases and where a position is eliminated in its entirety. In these instances, a plaintiff establishes a *prima facie* case by

demonstrating (1) that she was in a protected age group and was adversely affected by an employment decision, (2) that she was qualified for her current position or to assume another open position at the time of discharge, and (3) evidence by which a fact finder reasonably could conclude that the employer intended to discriminate on the basis of age in reaching that decision. *See Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1441 (11th Cir. 1998); *Benson v. Tocco*, 113 F.3d 1203, 1207-08 (11th Cir. 1997).[5]

Based on this record, it is questionable whether Carver has presented evidence sufficient to establish a *prima facie* case of age discrimination.[6]   Notwithstanding, it will be assumed, for purposes of this motion, that Carver has met her burden of establishing a *prima facie* case.

Once a plaintiff establishes a *prima facie* case, the burden of production then shifts to the employer, who must articulate at least one legitimate, nondiscriminatory reason for discharging the plaintiff. *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1426 (11th Cir. 1994). If the employer satisfies

---

[5] The record is unclear as to what legal criteria Carver intends to use to establish a *prima facie* case.  In her response to the motion for summary judgment, however, she argues that there is no requirement for her to show traditional comparator evidence because her position with the Sheriff's Office was eliminated and defunded.  That is, Carver submits that the Court should apply the modified *McDonnell Douglas* burden shifting test applicable to cases involving RIF.  Plaintiff's Opp., p. 7.  In contrast, the Joint Pretrial Statement indicates that the parties have agreed the traditional *McDonnell Douglas* criteria apply to Carver's claim.  Joint Pretrial Statement (Dkt. 29, p. 8); *see also* Amended Complaint, ¶ 4.

[6] For example, Carver has failed to direct the Court to any evidence in the record establishing the age of the purported similarly-situated employees.  While Carver states that Pidgeon "was approximately thirty years old" and Dr. Weaver was 38 years old at the time of Carver's termination, *see* Plaintiff's Opp., pp. 1-2, the furnished record cites do not support Carver's position.  In addition, Dr. Weaver and Pidgeon's dates of birth were redacted from the copies of their deposition transcripts filed with the Court. *See* Weaver Dep., p. 6; Pidgeon Dep., p. 4.  In fact, the record is devoid of any admissible evidence establishing even Carver's age or that she is a member of a protected class.  Similarly, it is questionable given Carver's perceived performance as Medical Services Manager whether she can establish that she was qualified for her position or that she was treated differently from similarly situated employees. *Cf. Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999) (similarly situated comparator's misconduct must be "nearly identical in quantity and quality"); *Marcelin v. Eckerd Corp. of Fla., Inc.*, No. 8:04-CV-491-T-17MAP, 2006 WL 923745 at *4 (M.D. Fla. April 10, 2006) (a plaintiff fails to establish that she is qualified for a job "if the evidence shows that Plaintiff's job performance clearly failed to meet Defendant's expectations") (citing *Baker v. Sears, Roebuck, & Co.*, 903 F.2d 1515, 1520 (11th Cir. 1990)).

its burden by articulating one or more non-discriminatory reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is pretext for illegal discrimination. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).

Assuming Carver has established a *prima facie* case, the Sheriff's Office has produced a legitimate, nondiscriminatory reason for its decision to terminate Carver. Specifically, the Sheriff's Office has produced evidence that Carver was terminated because of performance issues relating to the PHS Litigation. *See, e.g.*, Docobo Dep., pp. 17-18, 20; Weaver Dep., p. 14; Previtera Dep., p. 22. The Sheriff's Office has therefore satisfied its burden of articulating a legitimate nondiscriminatory reason for its decision. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (noting that a defendant must only produce evidence of reasons which if believed would support a finding that unlawful discrimination was not the cause of the challenged employment action).

As a result, Carver has the burden of producing sufficient evidence to warrant a conclusion that the Sheriff's Office's proffered reason was pretextual. *See Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989). To meet her burden, Carver must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted).

Carver claims that the reason offered by the Sheriff's Office to justify her termination (*i.e.*, her poor performance in connection with the PHS Litigation) is "fundamentally inconsistent" with the Sheriff's Office statement that she was being terminated because her position was being eliminated. Carver argues that this inconsistency, standing alone, is sufficient to establish pretext.

9

Carver's argument is based on her testimony that at the time she was terminated she was told the reason for her termination was that her position was being eliminated. However, it is undisputed that the Sheriff's Office referred to Carver's poor performance when it informed her of her termination. *See, e.g.*, Plaintiff's Dep., pp. 44, 52-54, 56-57, Ex. 6.[7] A reasonable jury is unlikely to accept Carver's version of events (*i.e.*, that the discussion about her performance during the same meeting when she was terminated was merely superfluous).

Even accepting Carver's version of the events as true, the mere fact that two different reasons may exist for her termination is not a sufficient basis for a reasonable jury to find that those reasons are pretextual or that Carver was the victim of unlawful discrimination. Where, as here, the legitimate, nondiscriminatory reasons offered by an employer for an adverse employment action are not mutually exclusive, any potential inconsistency is insufficient, standing alone, to establish pretext. *Compare Wisdom v. M.A. Hanna Co.*, 978 F. Supp. 1471, 1480 (N.D. Ga. 1997) (employer's reasons for terminating employee were not pretextual even though his supervisor and employer's president offered somewhat inconsistent explanations for his termination, poor performance and lack of required skill set, as both reasons were supported by strong factual bases,

---

[7] Carver does not dispute that if she had failed to properly monitor the contract with PHS, the Sheriff's Office would have had a legitimate reason for terminating her. Plaintiff's Opp., p. 9. Instead, Carver disputes the purported factual basis for her termination (*i.e.*, her performance during the PHS Litigation). *See, e.g.*, Plaintiff's Dep., pp. 45-48, 50-55, 70-71, 90-91. Specifically, Carver argues that, contrary to the Sheriff's Office assertion, "there were no documents [produced in the PHS litigation] proving that [Plaintiff] had knowledge that PHS was in possession of documents establishing that it sought reimbursement." Plaintiff's Opp., p. 4 (citing Plaintiff's Dep., p. 48). However, Carver "is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. "The inquiry into pretext centers upon the employer's beliefs, and not the employees own perceptions of [her] performance." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997); *accord Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998); *see also Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); *Jones v. Winn-Dixie Stores, Inc.*, 75 F.Supp.2d 1357, 1366 (S.D. Fla. 1999) ("Whether or not the employer turns out to be right about the employee's conduct is not relevant, as long as the discipline was not based on discriminatory animus.").

and reasons were not mutually exclusive) *with Benson v. Tocco*, 113 F.3d 1203, 1209-10 (11th Cir. 1997) (evidence that one plaintiff "expressly was informed at the time of his termination that the decision to include him in the RIF was not a reflection of his capabilities or work," and at time second plaintiff was terminated employer "did not indicate ... that his inclusion in the RIF was performance-related" was sufficient to establish pretext).

The Eleventh Circuit's decision in *Tidwell v. Carter Prods.*, 135 F.3d 1422 (11th Cir. 1998), is particularly instructive. In *Tidwell*, an employee was initially told that he had done a great job, but that his position was being terminated because there was going to be a realignment of territory. *Id.* at 1427. In a memo later written about the positions which would be affected by the territory realignments, the employer noted that there was a "performance issue" with the plaintiff. *Id.* The Eleventh Circuit held that "[a]t most, the jury could find that performance was an additional, but undisclosed reason for the decision; the existence of a possible additional non-discriminatory basis for [plaintiff's] termination does not, however, prove pretext." *Id.* at 1428 (reversing judgment entered in favor of plaintiff and remanding for entry of judgment in favor of defendant).

Carver's reliance on *Bechtel Constr. Co. v. Secretary of Labor*, 50 F.3d 926, 935 (11th Cir. 1995), and *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 526 (11th Cir. 1994), is misplaced. In *Bechtel*, the employer initially denied a reason for terminating the employee and then later gave that exact reason to justify the termination, creating a blatant "inconsistency." *See Bechtel*, 50 F.3d at 935. In *Howard*, the plaintiff presented evidence of inconsistencies in the defendant distributor's testimony as to qualifications of those awarded dealerships and the extent to which the distributor had a policy of awarding dealerships to relatives of current owners. *Howard*, 32 F.3d at 526. The Eleventh Circuit determined that this evidence, "viewed in the context of unwritten criteria for the

award of dealerships and individualized rationale for individual decisions, ***articulated after the fact***," was enough to defeat summary judgment. *Id.* (emphasis added).

In contrast, the reasons offered by the Sheriff's Office for Carver's termination are not fundamentally inconsistent. That is, it is not inconsistent for an employee to be terminated both due to poor performance ***and*** because their position is being eliminated. That is what occurred in this case. The record reveals that Carver was terminated because of issues relating to the PHS litigation and her position was subsequently eliminated. *See, e.g.*, Docobo Dep., pp. 17-18, 20; Weaver Dep., p. 14; Previtera Dep., p. 22. Similarly, there is no evidence that the Sheriff's Office formulated a justification for Carver's termination after the fact (*i.e.*, both the elimination of her position and her poor performance during the PHS Litigation were presented to Carver at the time of her termination). *Cf. Saridakis v. South Broward Hosp. Dist.*, 681 F. Supp. 2d 1338 (S.D. Fla. 2009) (plaintiff was not informed of employer's performance concerns at time of her termination; employer raised performance concerns for the first time after plaintiff filed lawsuit).

Carver has not established pretext nor has Carver offered any evidence that she was the victim of intentional age discrimination. Thus, the Sheriff's Office is entitled to summary judgment. *See Chapman*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant

employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.").[8]

### Conclusion

In conclusion, even viewing the entirety of the record in a light most favorable to Carver, there are no genuine issues of material fact as to her claim of age discrimination. Accordingly, Defendant's Motion for Summary Judgment (Dkt. 15) is **GRANTED**. All other pending motions, if any, are **DENIED** as moot. The Clerk is directed to **ENTER** judgment in favor of Defendant and **CLOSE** this case.

**DONE AND ORDERED** in chambers this _11th_ day of August, 2011.

_____
JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[8] Summary judgment is appropriate with respect to Carver's claims under both the ADEA and the FCRA. Historically, "[a]ge discrimination claims brought under the Florida Civil Rights Act have been considered within the same framework used to decide actions brought pursuant to the ADEA." *See, e.g., Zaben v. Air Prods. & Chemicals, Inc.*, 129 F.3d 1453, 1455 n.2 (11th Cir. 1997) (*per curiam*). While Carver argues that the "but for" standard adopted by the Supreme Court in *Gross* is inapplicable to her claims under the FCRA, the Court need not address this issue because Carver has failed to produce evidence of any discriminatory motive. *Cf. Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1519 (11th Cir. 1990) (noting pre-*Gross* standard that plaintiff bears the ultimate burden of proving that age was the determining factor in the defendant's adverse employment action).

13